16 S.W.3d 70 (2000)
Dana Dwayne WASHINGTON, Appellant,
v.
The STATE of Texas, Appellee.
No. 01-99-00716-CR.
Court of Appeals of Texas, Houston (1st Dist.).
March 2, 2000.
Rehearing Overruled May 5, 2000.
*71 Shawna L. Reagin, Houston, for Appellant.
Alan Curry, John B. Holmes, for State.
Panel consists of Justices O'CONNOR, HEDGES, and PRICE.[*]

OPINION
MICHOL O'CONNOR, Justice.
Dana Dwayne Washington, the appellant, was charged with aggravated sexual assault, with two enhancement paragraphs. The appellant pled not guilty. A jury found the appellant guilty as charged, and found both enhancement paragraphs true. The jury assessed punishment at 36 years confinement.
In two points of error, the appellant claims the trial court erred in refusing to include the lesser offense of assault in the jury charge, and by overruling the appellant's objection to the State's argument that a defense witness offered to pay the complainant to drop the charges. We reverse and remand.

FACTS
According to the complainant, she and the appellant had seen each other in the community on various occasions. On the evening of June 22, 1998, the appellant saw the complainant on the side of the road, and offered her a ride. The appellant drove to a liquor store. The complainant got beer for herself and gin for the appellant. The appellant's money was used for the purchase. While the appellant drove with the complainant, the appellant smoked from a crack pipe. The complainant asked to be taken home.
The complainant testified the appellant, however, drove to his own residence. The appellant claimed he needed to check on something in his house. Initially, the complainant decided to wait in the car, but she eventually decided to go inside. They went inside and sat on the couch. The complainant called her sister to let her know she was okay. The appellant and the complainant drank gin. The appellant filled the complainant's glass every time she took a drink.
The complainant testified the appellant suddenly hit her across the forehead with his fist and exclaimed, "Bitch, you better do what I say!" The appellant continued to strike the complainant, then removed her clothes. The complainant attempted to resist, but was bleeding badly. The appellant gave the complainant a towel to wipe up the blood.
The complainant testified the appellant dragged her out of the house to a smaller residence in the back area. The appellant put his penis in the appellant's vagina. The appellant told her, "Bitch, if you don't do what I say ..." Every time the complainant struggled, the appellant struck her in the face. The appellant poked the complainant all over her body with a knife. The appellant told the complainant that if she tried to escape he would shoot her or *72 stab her in the back. After intercourse, the appellant forced the complainant to give him oral sex. Afterward, the appellant raised the knife as if to stab the complainant. The complainant begged for her life.
The complainant was not able to get away until the next morning, and she went to a hospital later that day.

Improper Closing Argument
The appellant claims the trial court erred in overruling his objection to the assistant district attorney's (ADA's) argument that a defense witness tried to pay the complainant to dismiss the case.[1] The appellant asserts that the ADA's use of closing argument to accuse a defense witness of attempting to pay off the complainant was improper and rose to the level of reversible error.
The State makes two arguments in response: first, the appellant waived the right to appeal the first portion of the jury argument because he did not obtain a ruling, and second, that the preserved part of the argument was merely a challenge to the credibility of a defense witness.
The following transpired during the State's final argument to the jury at the guilt-innocence stage:
ADA: What else does [the appellant's girlfriend] have to say?
Well, in October of 1998, she dresses in a suit or a dress, something very nice, and goes over to [the complainant's] house; and her dad just happens to be walking outside with the medical records, completely unsolicited, if you will. He walks out to the car with [the complainant's] medical records and is going to give them to [the appellant's girlfriend]? She never told them who she was, but she's there, dressed very nicely. She's in a car. Obviously, there's been some conversations about medical records, because [the complainant's father] has the medical records there. So she talks to [the complainant].
Well, who do you think [the complainant] thought she was? She thought she was a D.A.
Defense: Objection, Your Honor. That's outside the record.
ADA: You can infer that, ladies and gentlemen.
The Court: Stay within the record. Logical inferences are all right, but stay within the record.
ADA: Do you know that this victim of rape, who is sitting there talking to the rapist's girlfriend, could have given her the time of day? Give me a break. She takes her to Burger King and buys her some food; is nice; never says she's a mediator. You're a rape victim
Defense: Objection, Your Honor. She arguing outside the record.
The Court: Overruled.
ADA: She's a rape victim and is talking to a mediator. [The complainant], bless her heart, is not of super intelligence. Think of what she was thinking and think of the intent on the part of [the appellant's girlfriend]. You can't believe a word she says. She's over there.
What else does she do? She says. "I'll give you a hundred dollars if you'll dismiss the case."
Defense: Objection, Your Honor. That's arguing outside the record. She denied that.
The Court: That's overruled.
...
ADA: You can't believe anything that lady says. I mean think about what she was trying to do in a rape case, on behalf of this man right here.
Proper jury argument is delineated into four categories: (1) summation *73 of the evidence; (2) reasonable deductions from the evidence; (3) responsive arguments; and (4) pleas for law enforcement. McFarland v. State, 989 S.W.2d 749, 751 (Tex.Crim.App.1999); Borjan v. State, 787 S.W.2d 53, 55 (Tex.Crim.App.1990); Bias v. State, 937 S.W.2d 141, 143 (Tex.App.-Houston [1st Dist.] 1997, no pet.). Appellate courts should not hesitate to reverse when it appears the State has departed from one of these areas in argument and has engaged in conduct calculated to deny the accused a fair and impartial trial. Wilson v. State, 938 S.W.2d 57, 59 (Tex.Crim. App.1996). The State must confine its jury argument concerning the defendant's guilt to statements based upon properly admitted evidence. Campbell v. State, 610 S.W.2d 754, 757 (Tex.Crim.App.1980).
If a jury argument exceeds the bounds of proper argument, it is not reversible error, unless, in the light of the record as a whole, the argument is extreme, manifestly improper, violative of a mandatory statute, or injects into the trial new facts harmful to the accused. McKay v. State, 707 S.W.2d 23, 38 (Tex.Crim.App. 1985). A prosecutor may strike hard blows, but not foul ones. Harris v. State, 996 S.W.2d 232, 237 (Tex.App.-Houston [14th Dist.] 1999, no pet.).
With regard to the first portion of the argument about which the appellant complains, error was not preserved because defense counsel did not get an adverse ruling from the trial court in response to her objection. Cook v. State, 741 S.W.2d 928, 939 (Tex.Crim.App.1987); Rogers v. State, 653 S.W.2d 122, 127 (Tex. App.-Houston [1st Dist.] 1983, pet. ref'd). When the court responded to the objection with the comment "stay within the record," the court did not rule on the objection.
As to the rest of the argument about which the appellant complains, the State claims the argument was reasonable because the accusations were inferences that could be drawn from the record and the argument went to the credibility of the a defense witness.
On cross-examination, the appellant's girlfriend stated that: she got the complainant's address from the appellant's former attorney; she went to the complainant's house unannounced; though she did not work, she dressed in very nice clothes for the visit; she did not inform the complainant of her relationship with the appellant; she asked to look at the medical records; she tried to "obtain" the medical records; she never gave the complainant her full name; she took the complainant to Burger King, and purchased her meal; and she told the complainant she was a "mediator for both families." She did, however, deny offering to pay the complainant 100 dollars to drop the charges.
Even considering the suspicious circumstances surrounding the entire "mediation visit," we find that the argument injected into the trial new facts harmful to the appellant. The ADA's argument that the defense witness told the complainant, "I'll give you a hundred dollars if you'll dismiss the case," (when there is no such evidence in the record) does not fall within any of the acceptable categories of jury argument established in Borjan. As a result, the jury argument by the ADA was improper. We must determine if the error is harmless.

Harmless Error Analysis
Under Texas Rule of Appellate Procedure 44.2, the court of appeals may reverse a conviction for a non-constitutional error only if it determines that the error affects a substantial right of the defendant. Tex.R.App. P. 44.2(b). Improper prosecutorial comments are non-constitutional errors, but may affect the substantial rights of the defendant. Reed v. State, 991 S.W.2d 354, 364 (Tex.App.-Corpus Christi 1999, pet. ref'd). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *74 King v. State, 953 S.W.2d 266, 271 (Tex. Crim.App.1997).
A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect. Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). To perform a harmless error analysis on a closing argument, an appellate court should consider the following factors: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) steps taken to cure the misconduct (the capability of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). Mosley v. State, 983 S.W.2d 249, 259-60 (Tex.Crim.App. 1998).
Severity of the Misconduct
Although the complainant was available to substantiate the allegations made by the ADA in the closing argument, the State did not bring the evidence in through her during it's case-in-chief or on rebuttal. Additionally, an argument concerning a witness' credibility cannot assert as fact something that was repeatedly denied on cross-examination. The ADA knew any sort of reference to the girlfriend's alleged attempt to pay the complainant was improper because it was flatly denied on cross-examination and the statement had no substantiation in the record.
The affect of the ADA's argument was to ask the jury why the appellant's girlfriend would try to "pay off" the complainant if the appellant was not guilty. We find the severity of the ADA's argument satisfies the first element.
Steps Taken to Cure the Misconduct
The trial court did not cure the misconduct. Before overruling the objection to the ADA's comments, the trial court stated, "Logical inferences are all right, but stay within the record." Then, when the ADA again argued outside the record, the trial court overruled the appellant's objections. By overruling timely and appropriate objections, the trial court put "the stamp of judicial approval" on the improper argument, thus magnifying the possibility for harm. Good v. State, 723 S.W.2d 734, 738 (Tex.Crim.App.1986). Additionally, this error did not occur in the middle of trial where any harmful effect may have been attenuated. Rather, it took place immediately before jury deliberations. We find the second factor in the appellant's favor.
Certainty of Conviction at the Close of Evidence
The State presented testimony from the complainant, three police officers and a serologist from the Houston Police Department Crime Laboratory. The only direct evidence of aggravated sexual assault came through the complainant's testimony.[2]
Officer Blades, who responded to the call, testified that he spoke with the complainant, and she was beaten about the face, neck, and back. He went to the appellant's house, but the appellant was not there. The complainant gave the officer her blue jeans from the night before and a t-shirt she picked up off the appellant's floor as she left. The complainant told the officer the appellant wore the shirt the night before.
Officer Falco, the criminal investigator who photographed the complainant's injuries, said the complainant was beaten about the face, neck, and back.
Officer Matthews, a sex crimes investigator, testified he took the complainant's statement and "she seemed very credible." Matthews said the complainant identified the appellant in a photo array. The officer did not get a search warrant for the appellant's *75 house because, in his opinion, too much time had elapsed.
The serologist testified that two pieces of evidence were submitted to the lab, a t-shirt of the appellant's and a pair of jeans worn by the complainant. There were six spots of what appeared to be blood on the appellant's shirt. The serologist did not test the blood on the shirt to determine if it was the complainant's blood. She also said there was no semen on the jeans or t-shirt.
Dr. Anigbogu, the complainant's emergency room examining physician, testified for the defense. Dr. Anigbogu said that his examination of the complainant revealed that she smelled of alcohol and he found no evidence of trauma to the vaginal or rectal areas. The complainant told the doctor she was beaten and "repeatedly" raped. The doctor testified the lack of trauma to the vaginal area was inconsistent with the extreme trauma to the face and neckindicating a violent struggle. The doctor said considering the events as described by the complainant and the apparent violence involved in the struggle, one would expect signs of lesions or trauma to the vaginal and rectal areas.
Jermaine Banks testified that, in July 1998, the complainant told him the appellant did not rape her.
We find that there was no certainty of conviction at the close of evidence.

Conclusion
We have no fair assurance that the improper argument did not influence the jury's verdict, or had only a slight effect on the jury's verdict. We conclude that declaring this type of error harmless would lead the State to repeat such tactics. Wilson v. State, 938 S.W.2d 57, 62 (Tex.Crim. App.1996). Certainly it is a "foul blow" when the State argues an incriminating "fact" that a witness has denied and that has no other substantiation in the record. We sustain point of error two.
We reverse and remand to the trial court for further proceedings.
NOTES
[*] The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.
[1] Because we are sustaining the appellant's second point of error, we need not address the first point of error.
[2] The complainant's testimony is set forth under the "Facts" section of this opinion.