In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00174-CR


______________________________




KENNETH WAYNE WILLEY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 1-A Judicial District Court


Newton County, Texas


Trial Court No. 4935




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Kenneth Wayne Willey appeals the judgment of the trial court finding him guilty of
the offense of escape (1) and sentencing him to thirty years' imprisonment. The trial court
entered a finding in the judgment that a deadly weapon was used during the commission
of the offense.

 Willey raises two issues: 1) the trial court erred in overruling his objection to the
State's argument regarding its necessity to prove the use of a deadly weapon in order to
have a finding of the use of a deadly weapon in the judgment; and 2) the evidence is
insufficient to support a finding of the use of a deadly weapon. 

 Willey was charged with escaping from the Newton County jail on April 18, 1999. 
The evidence showed Willey and another inmate, Beau Stevison, discussed a possible
escape. On the evening following this discussion, Willey took a broken mop handle (2) and
a pair of shoes to Stevison. Willey had trusty status and had unsupervised access to
certain parts of the jail. Although the broken mop handle was not located, one witness
described it as being one and one-half to two feet long. The evidence further showed that
Willey had often been allowed to move about inside and outside the jail without
supervision, and that Stevison also enjoyed considerable freedom of movement inside the
jail. On the evening of the escape, Willey engaged in conversation with Dana Belcher
Bean (3) in the dispatch area of the jail. Belcher was a jailer and dispatcher. While she was
distracted, Stevison, who had approached the area behind Willey, attacked her with the
mop handle until she opened the door to allow him to escape. Several witnesses testified
they observed Willey in the area, and all the witnesses testified he did not participate in the
actual beating. Belcher was struck approximately ten times with the mop handle and bled
profusely. She testified it required ten staples and ten to fifteen stitches to repair her head
wounds. She was afraid Stevison would kill her. The incident caused her to have
nightmares, and she no longer works for the sheriff's department. Willey testified the
escape was actually planned by one of the police officers in order for Willey, who had
served as an informant in the past, to gain information from Stevison about other crimes. 
Willey denied furnishing the mop handle to Stevison. 

 Since both issues raised by Willey concern the trial court's finding of the use of a
deadly weapon and are closely related, we will address them together. 

 The indictment in this case charged Willey with knowingly and intentionally escaping
from the custody of the Newton County sheriff, and that in effecting his escape, he used
or threatened to use a deadly weapon, namely, a mop handle. 

 The jury was instructed under the law of parties that it was required to determine
whether the State had proved beyond a reasonable doubt that Willey knew of Stevison's
intent to escape and acted to promote or assist the escape, and encouraged, directed,
aided, or attempted to aid Stevison in committing the offense of escape by the use or
threatened use of a mop handle, a deadly weapon. 

 The jury was also instructed as follows:

 A "deadly weapon" means a firearm or anything manifestly designed, made,
or adapted for the purpose of inflicting death or serious bodily injury or
anything that in the manner of its use or intended use is capable of causing
death or serious bodily injury.

 

 The Texas Penal Code defines "deadly weapon" as follows:

 (A) a firearm or anything manifestly designed, made, or adapted
for the purpose of inflicting death or serious bodily injury; or

 

 (B) anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury. 

 

Tex. Pen. Code Ann. § 1.07(17) (Vernon 1994).

 During the State's closing argument, the following occurred:

 [PROSECUTOR] : . . . Therefore, it's true I did not bring a medical
doctor up here to sit down in this chair and testify under oath that you could
kill somebody with a mop handle, that it was a deadly weapon. I just
assumed that the jury would arrive at that conclusion by their common sense
and I still make that assumption.


 [DEFENSE COUNSEL]: I have to object if that's saying that is not an
element that has to be proved by the State in proving its case. It specifically
has to be proven.


 [PROSECUTOR]: I don't have to prove that a broom handle is a
deadly weapon.


 THE COURT: All right. Excuse me. The jury will be guided by the
instructions.


 [PROSECUTOR]: I don't have to prove that a broom handle is a
deadly weapon and the charge tells you that a broom handle is a deadly
weapon. The law requires that the way it was used or intended to be used
makes it a deadly weapon. . . . As I used the example before, a baseball bat
is not a deadly weapon, but the way it's used can make it a deadly weapon
and that's what you had proven to you.


 The trial court may make an affirmative finding regarding the use of a deadly
weapon if the defendant was a party to the offense and knew that a deadly weapon would
be used or exhibited. Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp.
2002).

 A trial court is required to enter an affirmative finding of a deadly weapon in three
situations: 1) where the jury has found guilt as alleged in the indictment and the deadly
weapon has been specifically pled in the indictment; 2) where the jury has found guilt as
alleged in the indictment but, though not specifically pled as a deadly weapon, the weapon
pled is per se a deadly weapon; or 3) where the jury has affirmatively answered a special
issue on use of a deadly weapon. Vasquez v. State, No. 1573-00, 2001 WL 1043246, at
*1 (Tex. Crim. App. Sept. 12, 2001).

 The jury found Willey guilty of the offense of escape involving the use or threatened
use of a deadly weapon, as charged in the indictment.

 In response to Willey's first point, the State initially argues Willey waived error
regarding any alleged improper jury argument because counsel did not obtain a ruling on
his objection. The record quoted above does not show the trial judge specifically
articulated, in so many words, that the objection was overruled or sustained; he merely 
told the jury it would be guided by the instructions given by the court. 

 Before being permitted to complain on appeal regarding alleged improper jury
argument, an appellant must show that an objection was made and that the objection was
pursued to an adverse ruling. Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App.
1996); Toney v. State, 3 S.W.3d 199, 210 (Tex. App.-Houston [14th Dist.] 1999, pet.
ref'd); Dean v. State, 995 S.W.2d 846, 850 (Tex. App.-Waco 1999, pet. ref'd). This ruling
may be express or implicit. Tex. R. App. P. 33.1(a); Gutierrez v. State, 36 S.W.3d 509,
510-11 (Tex. Crim. App. 2001). The trial court did not expressly rule on the objection. We
must, therefore, determine whether the trial court implicitly overruled the objection or, in
fact, failed to rule at all. In Washington, the court held that Washington failed to preserve
error related to alleged improper jury argument when, in response to an objection, the trial
court admonished counsel to "stay within the record." Washington v. State, 16 S.W.3d
70, 73 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd); see also Rogers v. State, 653
S.W.2d 122, 127 (Tex. App.-Houston [1st Dist.] 1983, pet. ref'd, untimely filed). In Murillo
v. State, 839 S.W.2d 485, 493 (Tex. App.-El Paso 1992, no pet.), Murillo objected to
certain testimony, and the trial judge responded, "You may proceed." The court ruled this
response was an attempt to ignore or avoid the objection and did not constitute a definite
or conclusive ruling on the objection. We likewise find the trial court's response in the
present case was insufficient as either an express or implicit ruling on the defense
objection and was insufficient to preserve error. 

 Even assuming the trial court's response meant the court overruled Willey's
objection and error was properly preserved, we discern no harmful error. As a general
rule, it is error for the state to present a statement of law that is contrary to that presented
in the jury charge. Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990); Valencia
v. State, 966 S.W.2d 188, 190 (Tex. App.-Houston [1st Dist.] 1998, pet. ref'd). But, when
considering an appellate challenge to alleged improper jury argument, we are required to
consider the challenged remark in the context in which it was made. Rodriguez v. State,
975 S.W.2d 667, 685 (Tex. App.-Texarkana 1998, pet. ref'd). 

 In this case, it appears the prosecutor was merely arguing he did not have to prove
the mop handle was a deadly weapon per se. But even if the prosecutor's remarks could
be interpreted as an erroneous statement of the law, thereby reducing the State's burden
of proof, we note that after the trial court orally instructed the jury it would be bound by the
instructions he had given it, the prosecutor argued, consistent with the instructions in the
court's charge, that the manner in which the mop handle was used made it a deadly
weapon. In Burke v. State, 652 S.W.2d 788 (Tex. Crim. App. 1983), a case cited in
Whiting, the court, referring to a misstatement of law by the prosecutor in closing
argument, held that a subsequent reference in the argument to the court's charge, without
correcting the misstatement of law, was insufficient to overcome irreparable harm to the
appellant from the prosecutor's initial misstatement. Id. at 791; see Whiting, 797 S.W.2d
at 48. As we previously noted, we are required to examine any alleged erroneous
statement of law in the prosecutor's closing argument in its context. Therefore, even if the
statement, "I don't have to prove that a broom handle is a deadly weapon" is considered
to be an erroneous statement of law, the subsequent act of the trial court in referring the
jury to the court's instructions, followed by the prosecutor's immediate application of the
law as given in the court's charge, were sufficient to correct any misstatement to the jury. 
See Whiting, 797 S.W.2d at 49. 

 Improper jury argument is error of nonconstitutional dimension. Martinez v. State,
17 S.W.3d 677, 692 (Tex. Crim. App. 2000); Mosley v. State, 983 S.W.2d 249, 259 (Tex.
Crim. App. 1998). Such an error must therefore be disregarded if it does not affect
substantial rights. Tex. R. App. P. 44.2(b). An error affects a substantial right of the
defendant when the error has a substantial and injurious effect or influence on the jury's
verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In this case, even
if there was error which had been preserved, given the context of the prosecutor's
statement, the fact that it was only debatable whether it even constituted an improper
statement of the law, and the fact that immediately thereafter, the prosecutor properly
stated the law in conformity with the jury charge, error, if any, would be harmless.

 Willey also challenges the "sufficiency of the evidence" to support the trial court's
deadly weapon finding. His brief does not specify whether the challenge is to legal
sufficiency, factual sufficiency, or both. We will consider both in the interest of justice. 
See Aldrich v. State, 928 S.W.2d 558, 559 n.1 (Tex. Crim. App. 1996); Chimney v. State,
6 S.W.3d 681, 688 (Tex. App.-Waco 1999, no pet.). 

 Legal sufficiency review requires that we determine whether, after viewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979). Factual
sufficiency review requires that we view all of the evidence without the prism of "in the light
most favorable to the prosecution," and set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000). We give appropriate deference to the jury's
decision and do not substitute our opinion for the jury's. White v. State, 50 S.W.3d 31,
40 (Tex. App.-Waco 2001, pet. ref'd). 

 In Bui v. State, 964 S.W.2d 335 (Tex. App.-Texarkana 1998, pet. ref'd), we held
that, even if an article is not a deadly weapon per se, it can become one if, in the manner
of its use, it is capable of causing death or serious bodily injury. The State was required
to prove Willey used the mop handle in such a manner as could cause death or serious
bodily injury. See id. at 342-43. The jury is permitted to consider all of the facts in making
such determination, including the words of the accused, the intended use of the weapon,
the size and shape of the weapon, the testimony of the victim that he or she feared for his
or her life, the severity of the wounds inflicted, and testimony as to the weapon's potential
for deadliness. Id. at 343. In Bui, the defendant testified that the victim was dying and
was dead as he struck her with a Duraflame log, and that if someone picked up such a
log and hit somebody repeatedly over the head with it until they fell to the ground, he or
she would know this would cause serious bodily injury. Id. We found sufficient evidence
to support the jury's finding of the use of a deadly weapon. 

 In Granger v. State, 722 S.W.2d 175 (Tex. App.-Beaumont 1986, pet. ref'd),
Granger struck the victim several times with what was described as a stick or club, three
and one-half to four feet long and two inches in diameter. The victim was rendered
unconscious, and had lost teeth and blood. Granger was observed swinging the club with
both hands, much as a person would swing a baseball bat. In properly determining the
club or stick was a deadly weapon, the jury properly looked to the nature of the wounds
inflicted, and most importantly, the manner in which the weapon was used. Id. at 176-77. 

 In Jackson v. State, 865 S.W.2d 259 (Tex. App.-Eastland 1993, no pet.), Jackson
hit the victim on the head with a broken-off wooden bar stool leg. The victim suffered a
gash in his head which required several stitches and staples to close. The court affirmed
the deadly weapon finding; the bar stool leg was used as a club, an adaptation of the
instrument for the purpose of inflicting serious bodily injury. Id. at 261.

 In this case, the prosecutor acknowledged during closing argument that he had not
produced any expert medical witness to testify that the manner in which the broken mop
handle was used was capable of causing death or serious bodily injury. The Texas Court
of Criminal Appeals has ruled expert testimony is not required in order for the jury to find
a deadly weapon was used. Denham v. State, 574 S.W.2d 129, 131 (Tex. Crim. App.
1978); Bui, 964 S.W.2d at 345; Bethel v. State, 842 S.W.2d 804, 807 (Tex. App.-Houston
[1st Dist.] 1992, no pet.). However, such testimony has been held to be "useful,"
particularly where the evidence on the issue is meager. Bui, 964 S.W.2d at 345; Hester
v. State, 909 S.W.2d 174, 179 (Tex. App.-Dallas 1995, no pet.). While expert opinion
testimony may not be required, in the cases we have examined where expert testimony
was lacking, there has been lay opinion testimony specifically stating the particular
instrument involved was used or capable of being used to inflict death or serious bodily
injury. For example, in Bui, police officers testified the Duraflame log had the potential for
causing death or serious bodily injury. Bui, 964 S.W.2d at 343. In Bethel, the court found
that hospital records indicating that the victim had been hit in the head with a hammer and
the testimony of a police officer that he knew of situations where blunt instruments, such
as a hammer, caused serious bodily injury or death, supported the deadly weapon finding. 
Bethel, 842 S.W.2d at 807. In McElhaney v. State, 899 S.W.2d 15 (Tex. App.-Tyler 1995, 
pet. ref'd), the "opinion" evidence was supplied by the victim, Castenada:

 Here, the physical description of the pipe, the testimony as to its use in
inflicting repeated blows at Castenada's head, and Castenada's opinion that
the pipe was capable of causing death or serious injury was sufficient
evidence to support the jury's implicit finding that the pipe was a deadly
weapon. 

 

Id. at 17 (emphasis added). In Garcia v. State, 17 S.W.3d 1 (Tex. App.-Houston [1st
Dist.] 1999, pet. ref'd), the alleged instrument, a box cutter, was never found. However,
the victim and an eyewitness testified as to the use of the instrument to cut the victim, and
a doctor testified that, in his medical opinion, the stabbing wound could have created a
substantial risk of serious bodily injury. Id. at 5. 

 However, we conclude such opinion testimony, be it expert or lay, is not required
to support a jury finding that an instrument is a deadly weapon. In Bui, we held the jury
may consider all the facts in making its determination. In this case, the victim testified that
she screamed at Stevison during his attack, "don't kill me" and that her face was bleeding. 
She was struck ten times or more with the mop handle, and her injuries required staples
and stitches. Other inmates saw Stevison repeatedly beat the victim with the mop handle
and testified they observed that her head was bleeding. The sheriff testified that, on his
arrival at the jail after the incident, the victim was bleeding profusely, was hurt "pretty bad,"
and her head was "knocked over." Stevison testified he attacked the victim with a stick
one and one-half to two feet long. 

 A reasonable trier of fact could have found beyond a reasonable doubt that the
manner in which Stevison used the mop handle made that item a deadly weapon. All the
witnesses testified Stevison hit the victim repeatedly with the mop handle until she pushed
the proper button to let him escape. There is testimony that Willey aided Stevison by
supplying him with the weapon and by utilizing his trusty status, not only to supply
Stevison with the mop handle and shoes to use in his escape, but also to gain access to
the dispatch area and to distract the victim. We conclude the jury's finding is not so
against the overwhelming weight of the evidence as to be manifestly wrong and unjust. 
Willey's second point of error is overruled.

 We affirm the judgment.



 Donald R. Ross

 Justice


Date Submitted: November 19, 2001

Date Decided: November 29, 2001


Do Not Publish

1. Tex. Pen. Code Ann. § 38.06 (Vernon Supp. 2002).
2. The weapon, as specified in the indictment, was a mop handle. It has also been
referred to in testimony as a broom handle and a stick. We will refer to the weapon as a
mop handle in this opinion.
3. In her trial testimony, the victim identifies herself as "Dana Belcher Bean." In the
record, she is referred to almost exclusively by the name "Belcher," and we will refer to her
as "Belcher" in this opinion.


so-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-103-CR%20Morehead%20v.%20State%20Final%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00103-CR

                                                ______________________________

 

 

                            DALTON RAY MOREHEAD, JR.,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                              Delta County, Texas

                                                             Trial
Court No. 6765

 

                                                             
                                     

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                     MEMORANDUM 
OPINION

 

            A
fight between Dalton Ray Morehead, Jr., and Brandon McClanahan, possibly
involving some other individuals, at Moreheads residence in Cooper, Texas, in
2006, resulted in McClanahan suffering several serious knife wounds.  Morehead was later convicted by a Delta
County jury for aggravated assault with a deadly weapon[1] and
sentenced by the trial court to eleven years imprisonment and a $5,000.00
fine.  On appeal, Morehead claims error
in a lack of full discovery and asserts that the evidence[2] was
insufficient to prove aggravated assault and insufficient to allow rejection of
his defense of self-defense.  We affirm
the trial courts judgment, because (1) Moreheads discovery complaint was not
preserved for review, (2) sufficient evidence established Moreheads aggravated
assault, and (3) sufficient evidence supports the jurys rejection of
self-defense.

(1)        Moreheads Discovery
Complaint Was Not Preserved for Review

            Moreheads
appellate brief claims to include in an appendix a copy of a motion seeking
discovery, ostensibly filed with the trial court.  But Moreheads appendix contains no such motion.  Our correspondence file indicates Morehead
filed a pro se Motion for Production with this Court in December 2010, four
years after the date of his conviction. 
We overruled Moreheads pro se motion. 
Our review of the clerks record indicates that no motion for discovery
was filed with the trial court.

            As
a prerequisite to presenting a complaint for our review, Morehead must have
presented his complaint to the trial court by a timely request or motion, which
was ruled on by the trial court expressly or implicitly, or on which it refused
to rule despite complaint.  Tex. R. App. P. 33.1(a)(1).  Because no motion for discovery was presented
to the trial court, Morehead cannot complain of any action or inaction taken by
the trial court with regard to this matter. 
His unpreserved point of error presents nothing for review and is
overruled.

(2)        Sufficient Evidence
Established Moreheads Aggravated Assault 

            From the witnesses
at trial, several versions of the events that led to Moreheads conviction emerged.  A number of facts are undisputed.  Morehead argued with his wife on the day of
the incident, and left his home.  While
angry, he returned to his home at nighttime brandishing a dowel rod that was
made of [w]ood, but it also had nails in each end of it.  During this time, present at the Morehead
residence were Moreheads wife, Christine Morehead; his niece, Angie Sharpton;
Christines friend, McClanahan; and an acquaintance, James Carson.  Sharpton tried to prevent Moreheads entry
into the residence, and the two struggled with the dowel rod, which eventually
landed on the floor.  Next, McClanahan
and Morehead engaged in a fight. 
McClanahan got [Morehead] in a headlock and started swinging.  It is also undisputed that Morehead had a
pocketknife in his hand, that McClanahan did not have a weapon,[3]
and that McClanahan sustained serious injuries requiring hospitalization and
surgery resulting from several knife wounds to the face, ears, neck, arm, back,
and abdomen.  As soon as McClanahan
looked down, and there was blood running out, and my gut was hanging out,
he put [his] hand over it and hollered at [Carson] to take [him] to the
hospital.  McClanahan and Carson left
for the hospital, and Sharpton ran across the street and asked the neighbors to
call 9-1-1, leaving Morehead and Christine alone in the residence.  Christine exited the house by jumping out of
a glass window.  

            Although
each witness at trial confirmed the facts stated above, each cast a different
light on the incident.  For context, we
describe the nature of Moreheads relationship with his wife.  Morehead was married to Christine for ten
years.  The two were having marital
problems and had considered divorce. 
Morehead was reportedly abusive to his wife, had said that he would hold
her down and break her ribs, and had previously threatened to kill her.  Christine was scared of Morehead; and her
family, including Sharpton, was aware of the volatile relationship.  This background was before the jury as each
witness testified.

            The
jury first heard Sharptons perspective on the events.  She testified Morehead was yelling angrily
when he returned to the home with a stick in his hand.  Sharpton announced Moreheads presence to the
others in the home.  Morehead told
Sharpton to get out of the way when she prevented him from further entering the
home.  Sharpton pull[ed] the stick out
of his hand and told him [she] wasnt going to move.  This prompted Morehead to hit her in the
face, which she testified kind of force[d] me out of the way for him to get
by.  Sharpton added,

I see [McClanahan] coming, and [Morehead] grabs
him, and hes hitting him in the face, what it looks like to me.  And I see [Moreheads] arms, you know,
hitting back.  And then pretty quickly
they came apart. Well, thats when I noticed [McClanahan] was bleeding . . . . And
thats when I looked over at [Morehead], and I seen the front of the blade.

 

Sharpton ran to the neighbors
home and asked them to dial 9-1-1.  She
went back to the Morehead home, climbed into a car, and noticed Christine to where
it looks like shes jumped out the bedroom window and shes coming toward the
car.  Sharpton said she saw Morehead in
the garage placing what looked like a gun in the trunk of his car.  

            McClanahan
testified that he was in the Morehead house doing drugs when he witnessed the
confrontation between Morehead and Sharpton. 
He testified that Sharpton I guess, had jumped in front of [Morehead],
and I seen him with a stick raised up fixing to hit her, and thats when I took
off and knocked him off of her and got him in a headlock and started swinging .
. . [because] I was just trying to get him off of her.  Although McClanahan was stabbed in several
areas of his body, the most severe injuries included a ten to twelve inch gash
along his back, which was two inches deep, and a large, deep cut across his
abdomen.  He required surgery for
lacerations to his liver.  He testified
he did not see Moreheads knife.  

            Christine,
who was incarcerated at the time of trial on other matters, was next to
testify.  Her testimony differed from
that of Sharpton and McClanahan.

I just seen the [stick] rocking, and then I seen
it go down, and I heard my niece scream, and then she moved, and [Morehead]
came around, and Brandon McClanahan pushed me into what would be called a -- I
call it my junk room; . . . . He pushed me into that doorway, and he ran and
grabbed my husband. . . . He started hitting him in the face and telling him
that he hated him and he was going to kill him. . . . But while that was
happening, [Sharpton] had hit [Morehead] in the head with that stick . . . while
Brandon had hold of him hitting him. . . . [Morehead] was being beat up, and I
was grabbing [McClanahans] arm telling him to stop, and then I seen something,
and then I seen [McClanahan] bleeding.

 

            During
cross-examination, Christines testimony was challenged.  She claimed that Morehead was being beaten up
by both Sharpton and McClanahan for three minutes, that McClanahan was putting
all of his weight into his punches, and that Morehead was hit all over the face
repeatedly.  She claimed the beating was
so bad that Morehead kept jerking, each time, up, each time [McClanahan] was
hitting him.  Yet, pictures of Morehead
after the incident, coupled with responding officer Paul Robertsons testimony,
established that Morehead only had a few scrapes.  Even Morehead testified that he was not hit
in the face, but rather, on the top of the head, and that Sharpton had not hit
him.  Further, jailhouse letters from
Christine to Morehead said, I only care about getting you acquitted, and
revealed that she told her brother, who may or may not have been at the scene,
not to mention the knife.  When asked
why she jumped out of the bedroom window, Christine claimed that it was traumatizing
to me, and I just wanted my daddy. 

            Morehead
was last to testify.  He claimed that he
entered the house and was wrestling with Sharpton over the stick when
McClanahan forced his way past Christine, grabbed him in a headlock, and
started hitting him on the top of his head. 
Morehead said he did not remember pulling his knife out, but that the
knife was in his hand.  He testified, I
held my hand up with the knife and said, Just stay away from me.  Stay away from me, at which point McClanahan
backed up a couple of steps, and then came forward again.  At this point, Morehead claimed he was in a
daze and did not remember stabbing and slashing McClanahans ears, face, neck,
arm, back, and abdomen, although he also did not deny the action. 

            Officer
Robertson responded to the emergency telephone call.  Robertson made contact with McClanahan, who
stated, [H]e had got in a fight with Buddy[4]
Morehead, and he stabbed him. Morehead was found to have in his front pants
pocket a pocketknife, which Robertson testified was a deadly weapon.  According to Robertson, Christine appeared
pretty upset, and was rocking back and forth in her chair and said, He
tried to kill [McClanahan].  He tried to
kill [McClanahan].  Christine would not
provide a written statement.  Sharpton
told Robertson that Christine had jumped out of the window because [Morehead]
was holding a shotgun or a gun.  While
in jail, Morehead claimed he had been hit in the head a couple of times, but
when they escorted him to get medical attention, he refused treatment.  Morehead told the jury Robertson lied when he
testified Morehead refused medical attention. 


            In
evaluating legal sufficiency of the charged offense, we review all the evidence
in the light most favorable to the trial courts judgment to determine whether
any rational jury could have found the essential elements of aggravated assault
with a deadly weapon beyond a reasonable doubt. 
Brooks v. State, 323 S.W.3d
893, 912 (Tex. Crim. App. 2010) (citing Jackson
v. Virginia, 443 U.S. 307, 319 (1979)); Hartsfield
v. State, 305 S.W.3d 859, 863 (Tex. App.Texarkana 2010, pet. refd).  Our rigorous legal sufficiency review focuses
on the quality of the evidence presented. 
Brooks, 323 S.W.3d at 917
(Cochran, J., concurring).  We examine
legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the
jury to fairly resolve conflicts in testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 31819); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

            Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); see also Vega v. State, 267 S.W.3d 912,
916 (Tex. Crim. App. 2008).  Moreheads
indictment alleges he:

did then and there intentionally, knowingly, or
recklessly cause bodily injury to Brandon
Rhay McClanahan by attacking him on his abdomen, back, arm and neck with a
knife several times, and the defendant did then and there use or exhibit a
deadly weapon, to wit:  a pocket knife,
during the commission of said assault.

 

Morehead committed the offense of
aggravated assault if he intentionally, knowingly, or recklessly caused bodily
injury to McClanahan and used or exhibited a deadly weapon during the
assault.  Tex. Penal Code Ann. §§ 22.01(a)(1), 22.02(a)(2) (Vernon
Supp. 2010).  A deadly weapon is anything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury.  Tex. Penal Code Ann. § 1.07(a)(17)(B)
(Vernon Supp. 2010).

            Given
Moreheads testimony, as well as the testimony of all of the other witnesses,
there was no dispute that Morehead caused bodily injury to McClanahan with a
pocketknife, which Robertson testified was a deadly weapon.  In fact, the exhibits visually depicting
McClanahans severe injuries and the fact that he required surgery to repair an
injured liver supported the pocketknifes status as a deadly weapon.  Although Morehead testified he did not
remember stabbing McClanahan in the ear, face, neck, arm, back, and abdomen
because he was dazed, the jury members, as the exclusive judges of credibility
of witnesses, were free to disbelieve Moreheads testimony in concluding that
the act was committed intelligently, knowingly, or recklessly.  Wyatt
v. State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).  Because a rational jury could find the
essential elements of aggravated assault with a deadly weapon beyond a
reasonable doubt, we overrule this issue.

(3)        Sufficient Evidence
Supports the Jurys Rejection of Self-Defense

            Morehead
also argues the evidence is insufficient to support the jurys rejection of his
self-defense claim.  When a defendant
asserts a claim of self-defense, the State has the ultimate burden of
persuasion.  Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).  The burden of persuasion does not require the
production of evidence; it requires only that the State prove its case beyond a
reasonable doubt.  Id. at 594.  When a jury
finds a defendant guilty, there is an implicit finding against the defensive
theory.  Id.  When reviewing the
sufficiency of the evidence concerning the jurys rejection of self-defense, we
look to whether any rational jury could have found against the defendant on the
self-defense issue beyond a reasonable doubt. 
Saxton v. State, 804 S.W.2d
910, 914 (Tex. Crim. App. 1991); Hernandez
v. State, 309 S.W.3d 661, 665 (Tex. App.Houston [14th Dist.] 2010, pet.
refd).

            One
may use force against another when and to the degree he or she reasonably
believes the force is immediately necessary to protect himself or herself
against the others use or attempted use of unlawful force.  Tex.
Penal Code Ann. § 9.31 (Vernon Supp. 2010).  This includes using deadly force against the
other if a reasonable person in the actors situation would not have retreated[5]
and when and to the degree that he or she reasonably believes the deadly
force is immediately necessary to protect the actor against the others use or
attempted use of unlawful deadly force.  Tex. Penal Code Ann. § 9.32(a) (Vernon
Supp. 2010).

            Moreheads
brief argues that Morehead was justified in defending himself in his own home
using deadly force because Christine testified McClanahan said he was going to
kill Morehead, McClanahan had Morehead in a headlock, and Sharpton was hitting
McClanahan in the head with a stick. 
Only Christine, however, testified that McClanahan made any threat to
Morehead or that Sharpton was involved in the altercation at its critical
juncture.  Her testimony was proven
questionable, at best, when Morehead took the stand and testified the fight was
between Morehead and McClanahan.  The
issue of self-defense is a fact issue to be determined by the jury, which is
free to accept or reject the defensive issue. 
Saxton, 804 S.W.2d at 91314.  The fact-finder is the sole judge of the
weight and credibility of the evidence.  Brown v. State, 270 S.W.3d 564, 568
(Tex. Crim. App. 2008).  Therefore, the
jury was free to disbelieve Christines testimony that tended to support
Moreheads self-defense claim.  

            The
remaining facts supporting self-defense was that McClanahan may have been the
aggressor, weighed approximately ninety-five pounds more than Morehead, and
admitted to punching Morehead while having him in a headlock.  Because the Jackson v. Virginia standard is the only standard that we apply,
however, we examine the evidence in the light most favorable to the
verdict.  According to Moreheads own
testimony, there was a pause in the fighting. 
Morehead said that, when he held up the pocketknife, McClanahan backed
up a couple of steps.  Based on all of
the evidence, the jury could have found that: 
(1) McClanahan, who was using only his fists, was not using deadly
force given Robertsons testimony that Morehead sustained only a few scrapes;
(2) the pause in the fighting would have prompted a reasonable person to
retreat; or (3) the degree to which Morehead used deadly force in slashing
McClanahan in the ears, face, neck, arm, back, and abdomen was beyond that
which was reasonably necessary to protect himself.  Viewing the evidence in the light most
favorable to the verdict, we find that a rational jury could have found against
Morehead on the self-defense issue beyond a reasonable doubt. 

            We
overrule this issue.

            We affirm the judgment of the trial
court. 

 

 

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          April 19, 2011

Date Decided:             April 20, 2011

 

Do Not Publish











[1]See Tex.
Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2010).

 





[2]We
interpret Moreheads briefing on evidentiary sufficiency as raising two issues
on appeal:  first, a claim that the
evidence is insufficient for the jury to conclude beyond a reasonable doubt
that he committed aggravated assault, and second, a claim that the evidence is
insufficient to reject his self-defense justification beyond a reasonable
doubt.





[3]There
is some evidence suggesting that Sharpton had and used the dowel or stick in
the altercation.





[4]Morehead
was sometimes called Buddy.





[5]The
offense in this case occurred in 2006, before the 2007 amendments to Sections
9.31 and 9.32 of the Texas Penal Code changing the duty to retreat.