**Opinion issued February 27, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-24-00138-CR**

———————————

**JUAN ALBERTO CASTRO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1564724**

---

**MEMORANDUM OPINION**

A jury found appellant, Juan Alberto Castro, guilty of the felony offense of continuous sexual abuse of a child,[1] and the trial court assessed his punishment at confinement for thirty years. In five issues, appellant contends that the State

---

[1] *See* TEX. PENAL CODE ANN. § 21.02.

engaged in prosecutorial misconduct, his trial counsel provided him with ineffective assistance of counsel, and the trial court erred in admitting certain evidence, denying his motion for new trial without a hearing, and denying his motion for mistrial.

We affirm.

## Background

Houston Police Department ("HPD") Officer J. Torres testified that on February 26, 2017, N.S., the complainant, and her mother came to an HPD station to file a "sexual abuse report." They were both upset. The complainant identified "Juan Castro" as the perpetrator of the offense and stated that it had occurred at an apartment in Harris County, Texas.[2]

B.S. testified that she had three siblings: the complainant, T.S., and S.V.[3] They shared the same mother. Appellant was S.V.'s father. When appellant came into B.S.'s life, she was less than ten years old and living at her grandmother's house. Appellant was not "very nice" to her. Eventually, B.S. moved into an apartment with appellant, her mother, the complainant, T.S., and S.V.

According to B.S., the apartment had two bedrooms. B.S. slept in a bedroom with T.S. and the complainant. B.S. and T.S. shared a bunk bed, and the

---

[2] Officer Torres testified as to the specific address of the apartment.

[3] In the record, S.V. is also referred to as S.C., but for clarity, the Court will refer to her as S.V. throughout this memorandum opinion.

complainant had a separate bed in the room. S.V. slept in the other bedroom with appellant and the complainant's mother.

B.S. further testified that her mother worked overnight, and appellant worked during the day at his mechanic's shop. When her mother was at work, appellant was at the apartment with B.S. and her siblings. B.S. noted that appellant "always cho[se] to be around [the complainant] more often." The complainant would often babysit S.V. at night when their mother was at work, and this meant that she would sleep in appellant's bedroom. According to B.S., appellant "sexually abused" the complainant.

The complainant's mother testified that she had four daughters. The complainant was the oldest, then B.S., then T.S., and then S.V. The complainant's mother started dating appellant around 2011. At the time, she was living with her parents, along with B.S., the complainant, and T.S. The complainant's mother and appellant had a child together, S.V., in 2013.

At some point, the complainant's mother and her children moved into an apartment with appellant, and they lived together for about four years.[4] The complainant was about nine years old when she moved into the apartment with appellant. The apartment had two bedrooms. B.S., the complainant, and T.S.

---

[4]     The complainant's mother testified as to the address of the apartment.

3

shared one bedroom, and appellant and the complainant's mother used the other bedroom. There was one bed in appellant's bedroom.

While living at the apartment, the complainant's mother worked overnight from 11:00 p.m. to 7:00 a.m. at a hospital. She also worked during the day at appellant's mechanic's shop. Appellant worked during the day. Appellant took care of the children while the complainant's mother worked. No one else looked after the children.

The complainant's mother further testified that in 2013, the complainant became "quieter, more distant." The complainant's mother became worried when appellant would ask "the girls to stay [up] late night to watch movies when they had to go to school the next day." Because the complainant's mother was working at night, she could not do anything more than to tell her children "to go to sleep early" or "to go to sleep after they finished watching the movie." The complainant's mother also noted that in 2013, the complainant had "a hickey on her neck," and she asked the complainant about it. At that time, the complainant's mother continued living with appellant, but their relationship became more distant, and she did not feel "safe" around appellant. However, she was still working with appellant at the mechanic's shop, although she was not being paid for her work. The complainant's mother's only source of income was her overnight job at the hospital.

In 2015, the complainant's mother and her children moved out of the apartment she shared with appellant. The complainant was fourteen years old at the time. The complainant's mother and her children moved into a house together for about eight months, but she could not afford to keep the house. They then moved in with the complainant's mother's parents.

The complainant testified that when she was in fifth grade, her mother introduced her to appellant, and initially, the complainant considered appellant to be "a father figure" to her. In 2011, when the complainant was about ten years old, she began living at appellant's apartment. While the complainant lived at the apartment, her mother worked at night, and appellant worked during the day at a mechanic's shop. The complainant went to the shop frequently because her mother also worked there. When the complainant's mother was at work overnight, the complainant and her siblings stayed at the apartment with appellant. No one else babysat the complainant other than appellant.

The complainant testified that she remembered a time when she was eleven years old, and in the sixth grade, that she was asleep in her bed in her bedroom at the apartment and she woke up during the night with her shorts and underwear pulled down toward her ankles. Appellant was rubbing her vagina. B.S. and T.S. were asleep in their bunk bed at the time. The complainant froze and did not want to move.

Another time, the complainant was lying on the couch watching a movie with appellant and appellant put a blanket over her. Appellant then touched her underneath her clothes by putting his hand in her pants and rubbing her vagina. The complainant's mother was not home at the time. The touching of her vagina by appellant while the complainant was on the couch at the apartment occurred multiple times—probably ten or more times.

The complainant further explained that on one occasion appellant left "[a] hickey" on her neck. According to the complainant, appellant "had molested [her] in the morning before [she] went to school" and left the hickey on her neck. The complainant told her mother that appellant had caused the hickey, but appellant denied it.

Additionally, there was another incident that took place at appellant's mechanic's shop. Appellant hid the complainant "in one of [the] blind spots of the cameras" and he "touch[ed]" her under her pants. The complainant also recalled that another time, in appellant's bedroom, "he tried to penetrate" her and she "pushed him off." Appellant "got pretty upset, so he just left the bed."

According to the complainant, appellant inappropriately touched her from 2011 to 2015. In 2015, the complainant moved out of appellant's apartment, and she had not lived with him since.

6

In 2017, she told her sister "what [appellant] had d[one] . . . to [her]," and her sister became upset. The complainant's sister told their mother, and after the complainant's mother asked the complainant "if [it] was true," they went to speak with law enforcement officers.

The trial court admitted into evidence Exhibit 7, which was a copy of the Children's Assessment Center's records related to the complainant's sexual assault examination and the alleged sexual abuse by appellant. The records state that the complainant disclosed during her medical examination that her "mom's ex[,] Juan [C]astro" touched her in a way that she did not like or want. He touched her "down there, [her] front part" under her clothing. He touched her with his hand and his penis. He touched her about twenty times overall, and the first time it occurred, the complainant was eleven or twelve years old. The complainant was in seventh or eighth grade the last time that appellant touched her inappropriately. Appellant also made her touch his penis with her hand.

Appellant testified that he started dating the complainant's mother in 2011. He also met the complainant in 2011, when she was ten years old. The complainant, B.S., and T.S. had the same father. In October 2013, the complainant's mother and appellant had a child, S.V.

In August 2011, the complainant's mother and her children moved into appellant's apartment with him. The apartment had two bedrooms. The

7

complainant, B.S., and T.S. slept in the primary bedroom because it was bigger, and appellant, the complainant's mother, and S.V., after she was born, shared the other bedroom. The complainant, B.S., and T.S. did not sleep in appellant's bedroom overnight. The complainant's room had a bunk bed and a separate queen-sized bed.

After the complainant and her siblings moved in with appellant, they attended school. During the summer, the complainant and her siblings would stay at the apartment during the day or go to their grandmother's home. When the complainant's mother first moved in with appellant, she worked during the day and was home at night. Appellant did not arrive back at the apartment until after the complainant and her siblings were in bed. After S.V. was born in 2013, the complainant's mother began working overnight, and appellant worked as an automotive technician during the day. When this occurred, appellant and the complainant's mother stopped sleeping in the same bed at the same time because the mother was not there.

Appellant further testified that the complainant's mother worked overnight at a hospital from 2013 until 2015. And during that time, he was the only adult at the apartment during the evenings with the complainant and her siblings.

Appellant explained that he thought of the complainant, B.S., and T.S. as his "own kids." And while the complainant and her siblings lived with him, he made

8

sure that the family was financially taken care of and that the complainant's mother "could at least always attend all of their school activities, PTA meetings, [and] anything like that." The complainant's mother was financially dependent on appellant; he paid the rent for the apartment and the apartment's utilities.

Appellant recalled that on one occasion he fell asleep on the queen-sized bed in the complainant's bedroom with the complainant while he was watching television with the complainant and her siblings. However, he stated that he was never alone with the complainant in her bedroom, with the complainant on the couch in the apartment, or with the complainant at the apartment. Appellant agreed that the complainant had slept in his bed in his bedroom, but he stated that he was not there when that happened. No guests ever stayed the night at the apartment.

According to appellant, he and the complainant's mother broke up for the first time in 2014 because they argued too much. Appellant "kick[ed]" the complainant's mother and her children out of the apartment in 2014. After they broke up, the complainant's mother still allowed him to see S.V. The complainant did not make her outcry related to the alleged sexual abuse until 2017.

Appellant stated that he had never touched the complainant inappropriately. He had never grabbed her or tickled her.

9

**Admission of Evidence**

In his first issue, appellant argues that the trial court erred in allowing the admission of Exhibit 7, the Children's Assessment Center's records related to the complainant's sexual assault examination and the alleged sexual abuse by appellant, into evidence because the records "contained multiple hearsay statements from the complainant," specifically the sections of the records titled, "Referral Report" and "Questions to the Child." (Internal quotations omitted.) Appellant further asserts that Exhibit 7 was not admissible under the "medical treatment exception" to the hearsay rule and its admission into evidence harmed appellant.

A trial court's ruling on the admission of evidence is reviewed for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). A trial court's decision to admit evidence will be upheld if it is "within the zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996) (internal quotations omitted).

"If an issue has not been preserved for appeal, neither the court of appeals nor [the Texas Court of Criminal Appeals] should address the merits of that issue. Ordinarily, a court of appeals should review preservation of error on its own

motion." *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009) (internal footnotes omitted). To preserve a complaint for appellate review, a defendant must show that he first presented to the trial court a timely request, objection, or motion stating the specific grounds for his desired ruling. TEX. R. APP. P. 33.1(a); *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). Texas Rule of Appellate Procedure 33.1 requires that a defendant have "stated the grounds for the ruling that [he] sought from the trial court with sufficient specificity to make the trial court aware of [his] complaint." TEX. R. APP. P. 33.1(a)(1)(A); *see also Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (it is imperative to avoid forfeiting complaint on appeal that defendant "let the trial [court] know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the [trial court] to understand him at a time when the [court] is in the proper position to do something about it" (internal quotations omitted)). For this reason, "shotgun objections," which cite many grounds for the objection without argument, do not preserve a complaint for appellate review. *Johnson v. State*, 263 S.W.3d 287, 290 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd); *Webb v. State*, 899 S.W.2d 814, 818 (Tex. App.—Waco 1995, pet. ref'd).

At trial, the State moved to admit Exhibit 7, the complainant's records from the Children's Assessment Center related to her sexual assault examination.

Appellant then objected to the admission of Exhibit 7, stating that it "[c]ontain[ed] hearsay"[5] and for "inability to confront."[6]  In response, the State argued:

> [J]ust to respond to . . . defense's objection about hearsay and the confrontation clause or the authenticity of these documents -- the medical record[s] exception allows these documents to come in for treatment and diagnosis,[7] and the business record affidavit authenticates these documents.  And we certainly can make . . . the complainant . . . available for cross-examination.

The trial court overruled appellant's objection.

Although appellant's general hearsay objection would preserve his complaint for appellate review in most cases, the State, in the trial court, identified the exception to the hearsay rule on which it relied in its response to appellant's hearsay objection.  *See* TEX. R. EVID. 803(4); *see also Ponce v. State*, 89 S.W.3d 110, 119–20 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) ("Texas Rule[] of Evidence 803(4) excepts from the hearsay rule statements made for the purpose of medical diagnosis or treatment.  This exception is based on the assumption that the patient understands the importance of being truthful with the medical personnel

---

[5]    *See* TEX. R. EVID. 801(d) (defining hearsay), 802 (hearsay not admissible).

[6]    In its briefing, the State asserts that appellant did not preserve his Confrontation Clause objection to Exhibit 7.  Although appellant objected to the admission of Exhibit 7 for "inability to confront" at trial, appellant's briefing does not appear to argue that the trial court erred in admitting Exhibit 7 because it violated his Sixth Amendment right to confrontation.  *See* TEX. R. APP. P. 38.1(i).  Thus, we do not address preservation of any Confrontation Clause complaint.

[7]    *See* TEX. R. EVID. 803(4) (exception to hearsay rule, when statement made for purpose of medical diagnosis or treatment).

involved to receive an accurate diagnosis and treatment." (internal citations omitted)). Appellant did not offer any response to the State's argument that Exhibit 7 was admissible under the "medical record[s] exception" to the hearsay rule. *See* TEX. R. EVID. 803(4) By failing to respond to the State's argument, appellant has forfeited his complaint. *See Bledsoe v. State*, 479 S.W.3d 491, 495 (Tex. App.—Fort Worth 2016, pet. ref'd) ("Although [defendant's] general hearsay objection would preserve his complaint for appellate review in most cases, the State identified the hearsay exception on which it relied in response to [defendant's] objection; therefore, [defendant] was required to further object that the invoked exception did not apply."); *see also Johnson v. State*, No. AP-77,030, 2015 WL 7354609, at *33 (Tex. Crim. App. Nov. 18, 2015) (not designated for publication) (where defendant lodged generalized "hearsay" objection and State respond that "complained-of statement met the excited-utterance exception to the prohibition against hearsay," defendant failed to preserve error for appellate review by "neither arguing that the statement failed to meet the excited-utterance exception nor asserting that her hearsay objection had another basis" (internal quotations omitted)); *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009) ("[I]n order to preserve a complaint for appeal, the complaining party must have done everything necessary to bring the relevant evidentiary rule and its precise and proper application to the trial court's attention."); *Lewis v. State*, No.

02-16-00179-CR, 2017 WL 2686325, at *9 (Tex. App.—Fort Worth June 22, 2017, pet. ref'd) (mem. op., not designated for publication); *Meyers v. State*, 865 S.W.2d 523, 524–25 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd).

Further, to the extent that appellant, in his briefing, asserts that Exhibit 7 was inadmissible because it contained "[h]earsay within hearsay," he did not raise that objection in the trial court, and it has not been preserved for appellate review. *See, e.g.*, *Santschi v. State*, No. 14-15-00771-CR, 2017 WL 3090001, at *7 (Tex. App.—Houston [14th Dist.] July 20, 2017, no pet.) (mem. op., not designated for publication); *Ponce*, 89 S.W.3d at 120 n.8; *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (complaint on appeal must comport with objection made in trial court).

Based on the foregoing, we hold that appellant did not preserve his complaint about the trial court's admission of Exhibit 7 into evidence.

**Motion for Mistrial**

In his third issue, appellant argues that the trial court erred in denying his motion for mistrial because the State engaged in improper closing jury argument and appellant was harmed by the trial court's denial of his motion for mistrial.

"Mistrial is an appropriate remedy in extreme circumstances for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (internal quotations omitted); *see also Archie v. State*,

340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (granting motion for mistrial is appropriate only when "the objectionable events are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant" (internal quotations omitted)); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (mistrial is trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile" (internal quotations omitted)). Otherwise, when the prejudice is curable, an instruction by the trial court to disregard eliminates the need for a mistrial. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004); *see also Davis v. State*, 268 S.W.3d 683, 694 (Tex. App.—Fort Worth 2008, pet. ref'd) (noting in most cases injury from improper jury argument can be cured when trial court instructs jury to disregard argument). We review the trial court's denial of a motion for mistrial for an abuse of discretion. *Archie*, 221 S.W.3d at 699.

In his briefing, appellant complains about the following statements made by the State during its closing argument to the jury:

1. "We selected you all because you represent different ethnicities, different areas of town, different occupations. When we -- when you find him guilty of sexual assault of a child, we want him to know, and we want everybody else out there to know that they can't go anywhere in Harris County and touch kids."

2. "If I had asked everybody what we should do with people that molest children, I'm sure I'd have gotten a million different

answers during that jury selection: Castrate them, kill them, throw them under the jail. There is a person who molests children. What is Harris County gonna do? You're Harris County, by the way."

3. "If why I knew I can come to be on a jury, it'd be -- we -- we'd take care of a lot of people like [appellant]."

4. "It's unrefuted that the only person in that house when [the complainant's mother] was gone was [appellant]."

5. "[W]e shift the focus from the sexual abuse, and then we blame the child. Why didn't you say anything? Why didn't you speak up immediately when it happened?"

6. "I try these cases every week. In fact, I'm meeting with somebody on Friday. They don't want you to pay attention to [appellant] putting his fingers on [the complainant's] vagina."

7. "There are a bunch of stats I could throw out to you about when children disclose. I can tell you that 83 percent --"

8. "It couldn't have been him. Hear the same thing about Jared Fogle, the Subway guy."

9. "[W]e don't, you know, hand people the script to say on the stand to the jury."

10. "We didn't offer [the complainant] a scholarship."

11. "What does [the complainant] win for doing this? She gets nothing except for justice for what happened at the hands of the defendant, because I assure you we -- we gave her nothing."

12. "We don't tell our witnesses what to say. We don't feed them information. We don't make them read the paper that they wrote the first time."

"The right to a trial untainted by improper jury argument is forfeitable."

*Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018). To preserve

16

error with respect to an improper jury argument, a defendant must: (1) contemporaneously object to the statement made by the State; (2) if sustained, request that the jury be instructed to disregard the statement; and (3) if the instruction is given, move for a mistrial. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); *see also* TEX. R. APP. P. 33.1(a). Ordinarily, an instruction by the trial court to disregard the remark is sufficient to cure error. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Failure to object to a jury argument or failure to pursue an adverse ruling to a defendant's objection to a jury argument forfeits a defendant's right to complain about the argument on appeal. *See Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004) (concluding defendant forfeited improper-jury-argument complaint on appeal by failing to object).

In his briefing, appellant concedes that he did not object to the second, third, ninth, tenth, eleventh, and twelfth statements made by the State during its closing jury argument. Because appellant did not object to those portions of the State's argument, we conclude that he has failed to preserve for appellate review his improper-jury-argument complaint related to those particular statements. *See Cook*, 858 S.W.2d at 473; *see also Crotts v. State*, No. 01-15-01108-CR, 2017 WL 3027657, at *5 (Tex. App.—Houston [1st Dist.] July 18, 2017, pet. ref'd) (mem. op., not designated for publication).

17

As to the closing jury argument statements made by the State that are listed above in numbers four, five, six, and seven, although appellant objected to those statements in the trial court, he did not obtain a ruling from the trial court on his objections. For instance, after appellant objected to statement number four, the trial court responded: "The -- the jury's heard the evidence and will be guided thereby." It did not overrule or sustain appellant's objection. In response to appellant's objection to statement number five, the trial court also responded: "The jury's heard the evidence and will be guided thereby." Again, it did not overrule or sustain appellant's objection. After appellant objected to statement number six, the trial court responded: "What's the legal objection?" And when appellant did not respond, the trial court told the State: "You may continue." This was not a ruling on appellant's objection. Finally, in response to appellant's objection to statement number seven, the trial court stated: "Ladies and gentlemen, you've heard the evidence, and you will be guided by the evidence that you've heard in this case. [The State] may continue." The trial court did not overrule or sustain appellant's objection.

A defendant's failure to pursue an adverse ruling to his objection to the State's closing jury argument forfeits the defendant's right to complain about the purportedly improper argument on appeal. *See Threadgill*, 146 S.W.3d at 670; *see also Washington v. State*, 16 S.W.3d 70, 73 (Tex. App.—Houston [1st Dist.] 2000,

pet. dism'd). Notably, a trial court's statement that "[t]he jury's heard the evidence and will be guided thereby" is not an adverse ruling on a defendant's objection and will not preserve error for appeal. *See Mayberry v. State*, 532 S.W.2d 80, 84 (Tex. Crim. App. 1975); *Humphrey v. State*, No. 02-20-00017-CR, 2021 WL 3085751, at *9 (Tex. App.—Fort Worth July 22, 2021, no pet.) (mem. op., not designated for publication) ("A trial court's statement that 'the jury will remember the evidence' is not an adverse ruling on an objection and does not serve to preserve error."); *Rice v. State*, Nos. 05-08-00605-CR, 05-08-00606-CR, 2011 WL 4140921, at *3 (Tex. App.—Dallas Sept. 16, 2011, no pet.) (mem. op., not designated for publication) (trial court's response that "[t]he jury will remember what the evidence was" was "not a ruling on the objection" and was "insufficient to preserve error" (alteration in original) (internal quotations omitted)). Here, we conclude that appellant failed to obtain an adverse ruling on his objections to the State's arguments listed above in numbers four, five, six, and seven, and thus, he failed to preserve for appeal his complaints as to those allegedly improper statements.

As to the State's eighth statement listed above, appellant, following the State's remark about "Jared Fogle, the Subway guy," stated: "I'm gonna object to who wanted a -- talking about a Subway guy." In response to appellant's objection, the trial court stated: "It's arguing outside the record. Ladies and

19

gentlemen, disregard the last statement made by the [State]. Do not consider it for any purpose. You may continue." Appellant did not request an express ruling on his objection, and apparently satisfied with the trial court's instruction, did not move for a mistrial following the State's purportedly improper argument.

A trial court implicitly sustains an objection to an improper jury argument by instructing the jury to disregard the State's statement. *See Routt v. State*, No. 01-22-00607-CR, 2023 WL 7135674, at *7 (Tex. App.—Houston [1st Dist.] Oct. 21, 2023, pet. ref'd) (mem. op., not designated for publication); *Brockway v. State*, 853 S.W.2d 174, 176 (Tex. App.—Corpus Christi–Edinburg 1993, pet. ref'd) (trial court "implicitly sustained the objection by instructing the jury to disregard the prosecutor's comment"); *see also Thomas v. State*, No. 14-18-00115-CR, 2019 WL 3227546, at *1 (Tex. App.—Houston [14th Dist.] July 18, 2019, no pet.) (mem. op., not designated for publication) (holding trial court implicitly sustained objection to improper jury argument by asking State to rephrase and instructing jury to disregard State's comment). Because, in response to appellant's objection to the State's eighth statement, the trial court gave what was functionally an instruction to disregard the State's remark about "Jared Fogle, the Subway guy," we conclude that the trial court implicitly sustained appellant's objection and instructed the jury to disregard the statement. To preserve his complaint for our review, however, appellant was then required to move for a mistrial and obtain an

20

adverse ruling on his motion. He did not do so. *See Cook*, 858 S.W.2d at 473; *Routt*, 2023 WL 7135674, at *7; *see also Mathis v. State*, 67 S.W.3d 918, 927 (Tex. Crim. App. 2002) (reaffirming rule that even if argument is such that it could not be cured by instruction, defendant is required to object and request mistrial).

We conclude that without an adverse ruling on his motion for mistrial, appellant's complaint about the State's statement listed in number eight is not preserved for our review. *See Archie*, 221 S.W.3d at 699 ("To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objections to jury argument.").

Finally, appellant's last jury-argument complaint, listed first above, concerns the following remark by the State during its closing argument: "When we -- when you find him guilty of sexual assault of a child, we want him to know, and we want everybody else out there to know that they can't go anywhere in Harris County and touch kids."[8] In response, appellant objected, stating: "Improper argument asking -- talking about other people that aren't in the room, in the city." The trial court sustained appellant's objection and instructed the jury to "disregard the last

---

[8] The quoted portion of the State's argument is longer in appellant's briefing, but it appears that appellant's complaint really centers on the State's invocation of "the community" of Harris County and not the other portions of the quotation.

comment made by the [State]" and to "not consider it for any purpose whatsoever." Appellant then moved for a mistrial, which the trial court denied.[9]

On appeal, appellant argues that the State's argument to the jury was improper because it told the jury "[t]hat the people [were] asking the jury to convict [appellant]" and "[t]hat the community would want [appellant] sent to prison if the people knew what he had done."

Although the State is afforded wide latitude in its jury arguments, proper jury argument falls within four general categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). Proper jury argument is not objectionable. *See, e.g.*, *Carter v. State*, No. 01-22-00197-CR, 2022 WL 17813756, at \*4 (Tex. App.—Houston [1st Dist.] Dec. 20, 2022, no pet.) (mem. op., not designated for

---

[9] In his briefing, appellant asserts that his request for a mistrial related not only to the State's remark listed in number one above, to which appellant objected and received a ruling, but instead, his motion was "a response to the repeated improper arguments mounting to a level that risked dominating the jury's attention and overtopping [its] ability to focus on the evidence instead of the other improper focuses introduced and urged by the State's continued improper arguments." Essentially, appellant asserts that his motion for mistrial related to the "rapid succession of [purportedly] improper arguments" made by the State—arguments for which appellant failed to preserve error. Appellant has not provided any legal authority to support his contention that we may consider any non-preserved error in determining whether the trial court erred in denying his motion for mistrial. *See* Tex. R. App. P. 38.1(i). Additionally, the record indicates only that appellant requested a mistrial following the State's remark listed in number one above.

22

publication); *Vasquez v. State*, No. 01-19-00031-CR, 2020 WL 3969721, at *6 (Tex. App.—Houston [1st Dist.] July 14, 2020, pet. ref'd) (mem. op., not designated for publication).

The complained-of remark made by the State during its closing argument constituted a plea for law enforcement, which is a permissible form of jury argument. *See Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990). As courts have previously concluded, a statement by the State during closing argument that asks the jury to send a message to the community that violence will not be tolerated is permissible, and it is proper for the State to argue on behalf of children during closing and to remind jurors of the effect their verdict may have on that segment of the community.[10] *See, e.g.*, *McGee v. State*, 774 S.W.2d 229, 240 (Tex. Crim. App. 1989); *Goocher v. State*, 633 S.W.2d 860, 864 (Tex. Crim. App. [Panel Op.] 1982) ("I am asking you to enforce it. I'm asking you to do what needs to be done to send these type[s] of people a message to tell them we're not tolerating this type of behavior in our county." (internal quotations omitted));

---

[10] We note that a prosecutorial argument is improper if it induces the jury to reach a particular verdict based upon the demands, desires, or expectations of the community. *See, e.g.*, *Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984) (holding improper argument: "Now, the only punishment that you can assess that would be any satisfaction at all to the people of this county would be life." (emphasis omitted)). However, mere reference to "the community" by the State during its closing argument does not constitute an improper appeal to community expectations. *Harris v. State*, 122 S.W.3d 871, 888 (Tex. App.—Fort Worth 2003, pet. ref'd).

23

*Murray v. State*, No. 03-09-00541-CR, 2011 WL 2162864, at \*6–7 (Tex. App.—Austin June 1, 2011, pet. ref'd) (mem. op., not designated for publication); *see also Borjan*, 787 S.W.2d at 56 (arguments on behalf of children are permissible because "the jury is reminded of the effect that their verdict may have on the rights of a particular segment of the community"); *Caballero v. State*, 919 S.W.2d 919, 924 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) ("A prosecutor may argue the impact of a verdict on the community.").

"An argument constitutes a proper plea for law enforcement if it urges the jury to be the voice of the community, rather than asking the jury to lend its ear to the community." *Harris v. State*, 122 S.W.3d 871, 888 (Tex. App.—Fort Worth 2003, pet. ref'd). And a request by the State for the jury to "'represent the community' and 'send a message' falls within the parameters of proper argument as a plea for law enforcement." *Id.*; *see also Barcenes v. State*, 940 S.W.2d 739, 749 (Tex. App.—San Antonio 1997, pet. ref'd) (holding proper State's argument: "You know, you're here because you have been chosen by the community to make the decision, and that's it. . . . [D]on't send a message to the community that you're going to believe."); *Caballero*, 919 S.W.2d at 924 (holding proper State's argument: "[J]urors are sick and tired of this. Jurors are tired of crime because jurors such as yourself are members of the community you represent. You represent the community." (alteration in original) (internal quotations omitted)).

24

Here, we conclude that the State's argument listed in number one above was not improper, and as such, we hold that the trial court did not err in denying appellant's motion for mistrial based on the complained-of jury argument. *See, e.g., Carter v. State*, No. 10-22-00375-CR, 2024 WL 2076475, at *13 (Tex. App.—Waco May 9, 2024, pet. ref'd) (mem. op., not designated for publication) ("Since the prosecutor's argument . . . in this case was not improper, the trial court did not err in denying [defendant's] motion for mistrial.").

We overrule appellant's third issue as to the portion that has been preserved.

**Prosecutorial Misconduct**

In his fourth issue, appellant argues that the State engaged in prosecutorial misconduct because it "repeatedly resorted to improper arguments" during its closing jury argument. Appellant further asserts that "this pattern of prosecutorial misconduct deprived [him] of a fair trial."

Appellant's prosecutorial misconduct complaint is premised on the allegedly improper closing jury arguments he complained about in his third issue, listed above as numbers one through twelve. We have already concluded that the State's first statement did not constitute an improper jury argument, and thus, it cannot serve as a basis for appellant's prosecutorial-misconduct complaint. *See, e.g., Jumper v. State*, No. 02-22-00286-CR, 2024 WL 3059060, at *15 (Tex. App.—Fort Worth June 20, 2024, pet. ref'd) (mem. op., not designated for publication)

(where record did not show that State engaged in improper behavior, defendant could not prevail on prosecutorial-misconduct complaint). We have also concluded that appellant did not preserve his complaints as to the State's purportedly improper arguments listed above in numbers two through twelve.[11] Because appellant has forfeited his right to complain on appeal as to those jury arguments, they cannot serve as the basis for his prosecutorial-misconduct complaint either. *See, e.g., Powell v. State*, No. 04-24-00302-CR, 2025 WL 2793221, at *11 (Tex. App.—San Antonio Oct. 1, 2025, pet. filed) (mem. op., not designated for publication); *Cantu v. State*, 678 S.W.3d 331, 351–52 (Tex. App.—San Antonio 2023, no pet.) (concluding court need not decide whether State's closing argument amounted to prosecutorial misconduct because defendant did not object so "the question of whether the [State's] conduct was improper [was] not before" court); *see also Forsyth v. State*, No. 01-17-00506-CR, 2018 WL 5544423, at *4 (Tex. App.—Houston [1st Dist.] Oct. 30, 2028, no pet.) (mem. op., not designated for publication) ("Prosecutorial misconduct is an independent basis for objection that must be specifically urged to preserve error.").

---

[11] Appellant also complains about the following statement made by the State during its closing jury argument: "If I had asked everybody what we should do with people that molest children, I'm sure I'd have gotten a million different answers during that jury selection: Castrate them, kill them, throw them under the jail." Appellant did not object to this portion of the State's closing jury argument at trial.

26

Further, to the extent that appellant argues that he did not need to object to the State's purportedly improper statements during its closing jury argument because they amounted to fundamental error, we note that the Texas Court of Criminal Appeals has rejected that argument. In *Hernandez*, the court explained that the "right to a trial untainted by improper jury argument is forfeitable" and "[e]ven an inflammatory jury argument is forfeited if [a] defendant does not pursue his objection to an adverse ruling." 538 S.W.3d at 622–23. In doing so, the court noted that the defendant in *Hernandez* had argued on appeal that the court should "hold that error preservation was not required . . . due to the egregious nature of the [State's] argument." *Id.* at 623. The court declined the defendant's invitation though, emphasizing that it would "not elevate the right to be free of improper jury argument to the status of an absolute requirement like jurisdiction." *Id.* Thus, the court held that "[e]rroneous jury argument must be preserved by objection pursued to an adverse ruling; otherwise, any error from it is waived." *Id.*; *see also Compton v. State*, 666 S.W.3d 685, 729 (Tex. Crim. App. 2023) (rejecting defendant's argument on appeal that State's closing arguments "that are so improper that they rise to the level of prosecutorial misconduct in violation of due process should be reviewable on appeal even in the absence of a trial-level objection" (internal quotations omitted)); *Morris v. State*, 460 S.W.3d 190, 197 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (rejecting defendant's argument

27

that State's closing jury argument was "incurable fundamental error" by explaining that "[e]ven if the State's argument were incurable and rose to the level that it deprived [defendant] of his right to due process of law, [defendant] waived []his complaint by failing to object in the trial court"); *Temple v. State*, 342 S.W.3d 572, 603 (Tex. App.—Houston [14th Dist.] 2010) ("A defendant must object each time an improper argument is made, or he waives his complaint, regardless of how egregious the argument."), *aff'd on other grounds*, 390 S.W.3d 341 (Tex. Crim. App. 2013).

Appellant relies on a previous opinion from this Court to support his assertion that he need not have objected to the allegedly improper statements made by the State during its closing jury argument because the comments deprived appellant of fundamental fairness and due process of law. *See Rogers v. State*, 725 S.W.2d 350, 351–61 (Tex. App.—Houston [1st Dist.] 1987, no pet.). However, *Rogers* did not concern an allegedly unobjected-to improper jury argument by the State. Instead, in *Rogers*, the defendant asserted on appeal that the State's extreme conduct during the entirety of trial, "particularly [the prosecutor's] sidebar remarks, assumption of inflammatory facts not in evidence, prejudicial remarks stating her personal opinion, and improper bolstering, was manifestly improper and indicated a willful and calculated effort to deny the [defendant] a fair trial." *Id.* at 351. In referencing the State's improper questioning of witnesses at trial, this

28

Court explained that it must consider that the State "asked the question[s] in bad faith," and we emphasized that "[w]here there is serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process or, even worse, transforms the trial into a farce and mockery of justice, as occurred [in *Rogers*], resulting in deprivation of fundamental fairness and due process of law, the defendant is entitled to a new trial even though few objections are perfected." *Id.* at 359–60 (emphasis omitted).

We conclude that the facts of *Rogers* are distinguishable from the case at hand. *See, e.g.*, *Khan v. State*, No. 14-23-00231-CR, 2024 WL 4441034, at *7 (Tex. App.—Houston [14th Dist.] Oct. 8, 2024, pet. ref'd) (mem. op., not designated for publication) (noting in *Rogers* "the court determined that preservation was not necessary because the prosecutor questioned a witness in bad faith and made inflammatory allegations during the questioning lacking any evidentiary support"); *Johnson v. State*, 432 S.W.3d 552, 560–62 (Tex. App.—Texarkana 2014, pet. ref'd) (holding prosecutorial-misconduct complaint not preserved and distinguishing *Rogers* because it "involved flagrant and repeated misconduct by the prosecutor who repeatedly made side-bar remarks and suggested inflammatory facts which lacked evidentiary support while cross-examining the defendant and his character witnesses" and State's bad behavior "could serve no purpose other than to inflame and prejudice the minds of

29

the jurors" (internal quotations omitted)); *see also Forsyth*, 2018 WL 5544423, at *4–5 (same).

Further, we note that we must apply the binding authority from the Texas Court of Criminal Appeals which recently held that the failure to object waives a complaint about the State's improper closing jury argument.[12] *See Compton*, 666 S.W.3d at 730–31; *see also Jumper*, 2024 WL 3059060, at *15 ("*Rogers* was decided before more recent cases from the Court of Criminal Appeals clarifying error preservation. In *Compton*, the Court of Criminal Appeals held that even prosecutorial misconduct that rises to the level of a due process violation may be subject to procedural default." (internal citations omitted)).

Based on the foregoing, we hold that appellant has not preserved his prosecutorial-misconduct complaint for appellate review. *See, e.g.*, *Lopez v. State*, No. 14-23-00885-CR, 2025 WL 1109465, at *4 (Tex. App.—Houston [14th Dist.] Apr. 15, 2025, pet. ref'd) (mem. op., not designated for publication).

---

[12] We need not decide the extent, if any, to which the *Rogers*'s preservation exception survives recent Texas Court of Criminal Appeals' cases because, as noted above, *Rogers* is distinguishable from the instant case. *See, e.g.*, *Jumper v. State*, No. 02-22-00286-CR, 2024 WL 3059060, at *15 (Tex. App.—Fort Worth June 20, 2024, pet. ref'd) (mem. op., not designated for publication) (distinguishing *Rogers*, which concerned "serious and continuing prosecutorial misconduct that undermine[d] the reliability of the factfinding process" and "transform[ed] the trial into a farce and mockery of justice" (internal quotations omitted)).

**Ineffective Assistance**

In his fifth issue, appellant argues that his trial counsel provided him with ineffective assistance of counsel because his counsel "failed to impeach the complainant with her [prior] statement that she had never been touched inappropriately" during the guilt phase of trial and counsel requested that appellant be placed on community supervision during the punishment phase of trial. Additionally, appellant asserts that "[t]he totality of trial counsel's multiple professional errors prejudiced [appellant's] right to counsel and undermined confidence in the outcome of his trial."

The Sixth Amendment to the United States Constitution guarantees the right to the reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. VI; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *see also* TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05; *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986) (test for ineffective assistance of counsel same under both federal and state constitutions). To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

Appellant has the burden to establish both prongs of the *Strickland* test by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "[A]ppellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (internal quotations omitted).

## A. Failure to Impeach

In a portion of his fifth issue, appellant argues that his trial counsel's performance fell below an objective standard of reasonableness because counsel, during the guilt phase of trial, did not "confront the [c]omplainant with her [prior] inconsistent statement" that she "had never been touched inappropriately."

Generally, a party may impeach a witness with evidence of a prior inconsistent statement. TEX. R. EVID. 613(a); *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). Here, appellant asserts that his trial counsel should have cross-examined the complainant during her testimony about a statement she made in 2017 to a Child Protective Services worker that "she had not been touched."

During her direct examination, the complainant testified as follows:

> Q.    . . . [H]ad you ever been asked before whether or not something had happened to you?
>
> A.    Yes.
>
> Q.    When was that?
>
> A.    I'm not sure. I don't remember.
>
> Q.    Do you remember what you said?
>
> A.    I had said no.
>
> Q.    Why did you say no?
>
> A.    Again, I didn't wanna go through all of this.

Appellant's counsel did not ask the complainant about her prior statement during his cross-examination. However, the reasoning for counsel's decision is not developed in the record.

Allegations of ineffectiveness must be firmly founded in the record. *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999) (appellate court should be "highly deferential to trial counsel and avoid the deleterious effects of

hindsight"). This is because there is a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or trial strategy. *See Robertson*, 187 S.W.3d at 482–83. In most cases, a direct appeal is an inadequate vehicle for raising an ineffective-assistance-of-counsel complaint because the record is undeveloped, and a silent record cannot adequately reflect the motives behind trial counsel's actions. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003) ("[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective."). A silent record that provides no explanation for trial counsel's conduct, like the one here, will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Here, trial counsel has not been given an opportunity to explain his actions,[13] and we cannot conclude that the "challenged conduct was so outrageous that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 593 (when trial counsel has not been given opportunity to explain his actions, "the

---

[13] Although appellant filed a motion for new trial, he did not argue in his motion that his trial counsel provided him with ineffective assistance of counsel because counsel failed to impeach the complainant about her prior inconsistent statement. *See Hall v. State*, No. 02-09-00213-CR, 2010 WL 4570035, at *3 (Tex. App.— Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication) (noting where defendant filed motion for new trial, but did not raise ineffective-assistance-of-counsel complaint in motion, "any trial strategy that [defendant's] attorneys may have had for their challenged actions [was] not contained in the record").

appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it" (internal quotations omitted)); *see also Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005) ("Cross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial. It is frequently a sound trial strategy not to attack a sympathetic []witness . . . ." (internal footnote omitted)); *Dannhaus v. State*, 928 S.W.2d 81, 88 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) ("If ineffective, cross-examination can serve to bolster the credibility of the witness and underscore the very points that are sought to be impeached. . . . In addition, cross-examining a sympathetic witness . . . can offend jurors.").

We hold that appellant has not met his burden of establishing that his counsel provided him with ineffective assistance of counsel by failing to "confront the [c]omplainant with [a prior] inconsistent statement."

We overrule this portion of appellant's fifth issue.

**B. Range of Punishment**

In another portion of his fifth issue, appellant argues that his trial counsel's performance fell below an objective standard of reasonableness because counsel, during the punishment phase of trial, did not know "the range of punishment [for

35

the felony offense of] continuous sexual [abuse] of a child" and requested that the trial court place appellant on "probation."

The offense of continuous sexual abuse of a child constitutes a first-degree felony offense, "punishable by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years." *See* TEX. PENAL CODE ANN. § 21.02(h); *see also Rios v. State*, 665 S.W.3d 467, 471 n.9 (Tex. Crim. App. 2022) (defendants convicted of offense of continuous sexual abuse of child not eligible for community supervision). During the punishment phase of trial, appellant's trial counsel "urge[d] the [trial] [c]ourt to consider the lowest sentence, which, by law, [was] 25 years."[14] Thus, the record does not reflect that appellant's trial counsel did not understand the range of punishment for the first-degree felony offense of continuous sexual abuse of a child. *Cf. Thompson*, 9 S.W.3d at 813–14 (allegations of ineffectiveness must be firmly founded in record).

Further, although trial counsel also "move[d] for a sentence of community supervision," the record reflects that counsel did so in connection with his request for the trial court to find that the statutory scheme that required the punishment range for the offense of continuous sexual abuse of a child to be assessed at no less than twenty-five years' imprisonment constituted cruel and unusual punishment

---

[14] Appellant elected to have the trial court assess his punishment.

under the Texas and United States Constitutions. Ultimately, the trial court considered, but denied, appellant's request for community supervision in connection with its denial of his request to find "the statute setting forth the punishment scheme for . . . continuous sexual abuse of a child [was] unconstitutional pursuant to both the Texas Constitution and the United States Constitution." *Cf. Devenport v. State*, Nos. 14-20-00292-CR to 14-20-00295-CR, 2021 WL 1972440, at *2–3 (Tex. App.—Houston [14th Dist.] May 18, 2021, no pet.) (mem. op., not designated for publication) (holding Texas Penal Code section 21.02's punishment scheme "does not violate federal and statute constitutional prohibitions on cruel and unusual punishment" (emphasis omitted)).

As stated previously, a trial record alone is rarely sufficient to show ineffective assistance of counsel. *Williams v. State*, 526 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). And a silent record that provides no explanation for trial counsel's actions will not overcome the strong presumption of reasonable assistance. *Goodspeed*, 187 S.W.3d at 392; *see also Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007) (noting "presumption that trial counsel's performance was reasonably based in sound trial strategy"). Although appellant filed a motion for new trial, he did not argue in his motion that his trial counsel provided him with ineffective assistance of counsel during the punishment phase of trial because counsel did not know "the range of punishment [for the felony

offense of] continuous sexual [abuse] of a child" or because counsel requested that the trial court place appellant on community supervision.

Given that the record in this case does not clearly evidence the reason for trial counsel's conduct related to his request for community supervision, and we cannot conclude that counsel's conduct was so outrageous that no competent attorney would have engaged in it, we hold that appellant has not met his burden of establishing that his counsel provided him with ineffective assistance of counsel by requesting that the trial court place appellant on "probation." *See Goodspeed*, 187 S.W.3d at 392 (in cases where record silent as to trial counsel's reasoning, appellate court should find ineffective assistance only if challenged conduct so outrageous that no competent attorney would have engaged in it).

We overrule this portion of appellant's fifth issue.

## C. Cumulative Effect of Alleged Errors

In the remaining portion of his fifth issue, appellant asserts that the cumulative effect of the above alleged deficiencies in his trial counsel's performance, as well as trial counsel's failure to object to the complained-of portions of the State's closing jury argument, constituted ineffective assistance of counsel.

Here, we have concluded, based on the record, that appellant failed to meet his burden to show that his counsel provided him with ineffective assistance of

38

counsel by failing to "confront the [c]omplainant with [a prior] inconsistent statement" or by requesting that the trial court place appellant on "probation."

As to appellant's additional argument that his trial counsel provided him with ineffective assistance of counsel because counsel failed to object to certain allegedly improper statements made by the State during its closing argument,[15] we note that "[e]ven [where] the State's [closing] argument [i]s improper, that does not inexorably lead to the conclusion that [a] trial counsel was deficient for not objecting because counsel may have had a strategic reason for not doing so." *Ex parte Scott*, 541 S.W.3d 104, 120 (Tex. Crim. App. 2017). Because the record is silent as to trial counsel's reasoning for failing to object to the purportedly improper jury argument of the State, we cannot conclude that appellant has met his burden of establishing that his counsel provided him with ineffective assistance of counsel nor can we conclude that counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See Williams v. State*, No. 06-19-00272-CR, 2020 WL 7483956, at *4–5 (Tex. App.—Texarkana Dec. 21, 2020, pet. ref'd) (mem. op., not designated for publication) ("Because we can fathom a reasonable trial strategy in counsel's failure to object to the prosecutor's comment, we find that [defendant] has not met his [burden under] the first

---

[15]     These allegedly improper statements by the State about which appellant asserts his counsel should have objected to are listed above, numbers one through twelve, in our discussion of appellant's third issue. *See supra.*

*Strickland* prong."); *Bryant v. State*, 282 S.W.3d 156, 173 (Tex. App.—Texarkana 2009, pet. ref'd) (even where State engaged in improper jury argument, not finding ineffective assistance of counsel where record silent as to counsel's strategy and "it [was] possible that [defendant's] trial counsel did not wish to draw further emphasis to the State's improper remark by lodging a contemporaneous objection"); *Castoreno v. State*, 932 S.W.2d 597, 603 (Tex. App.—San Antonio 1996, pet. ref'd) (counsel does not provide ineffective assistance of counsel "merely because other counsel may have tried the case differently").

Because we have concluded, based on the record, that appellant has failed to meet his burden to show that any of the complained-of conduct by counsel alone constituted ineffective assistance of counsel, we hold that the cumulative effect of such actions does not rise to the level of ineffective assistance of counsel. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (acknowledging that non-errors may not, in their cumulative effect, amount to error); *Straight v. State*, 515 S.W.3d 553, 576 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (cumulative effect of trial counsel's actions did not amount to ineffective assistance because trial counsel did not render ineffective assistance of counsel in complained-of actions).

We overrule the remaining portion of appellant's fifth issue.

**Motion for New Trial Hearing**

In his second issue, appellant argues that the trial court erred in denying his motion for new trial without holding a hearing because appellant's motion for new trial "raised matters outside the trial record," "was property verified," and "was timely filed and presented." Specifically, appellant argues that his motion for new trial "raised matters not determinable by the record" because it asserted that his trial counsel was ineffective for "failing to investigate or call witnesses who could provide mitigation testimony in the punishment phase of trial."

A defendant in a criminal case "may file a motion for new trial before, but not later than [thirty] days after, the date when the trial court imposes or suspends sentence in open court." TEX. R. APP. P. 21.4(a). But a defendant does not have an absolute right to a hearing on the motion. *Washington v. State*, 394 S.W.3d 39, 42 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). The purpose of a hearing on a motion for new trial is (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal. *Id.*

A hearing on a motion for new trial is not required when the matters raised in the motion are subject to being determined from the record. *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). Conversely, a trial court abuses its discretion in failing to hold a hearing on a motion for new trial when that motion raises matters which are not determinable from the record. *Id.* But, while

41

recognizing that an unrestricted requirement of a hearing on matters not determinable from the record could lead to "fishing expeditions," the Texas Court of Criminal Appeals has also held that even a defendant who has raised such matters is not entitled to a hearing on his motion for new trial unless he establishes the existence of reasonable grounds showing that he could be entitled to relief. *Id.* at 339 (internal quotations omitted). Thus, as a prerequisite to a hearing when the grounds in the motion are based on matters not already in the record, the motion must be supported by an affidavit, either of the defendant or someone else, specifically setting out the factual basis for the claim. *Id.* The affidavit need not establish a prima facie case, or even reflect every component legally required to establish relief. *Id.* It is sufficient if a fair reading of it gives rise to reasonable grounds in support of the claim. *Id.* But affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, in that circumstance, no hearing is required. *Id.*

We review a trial court's decision to deny a hearing on a motion for new trial for an abuse of discretion. *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010). We will reverse "only when the trial [court]'s decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.* (internal quotations omitted). Our review is limited to the trial court's determination of whether the defendant has raised grounds that are both

undeterminable from the record and reasonable, meaning they could entitle the defendant to relief. *Smith*, 286 S.W.3d at 340. This is because the trial court's discretion extends only to deciding whether these two requirements are satisfied. *Id.* If the trial court finds that the defendant has met the criteria, the trial court has no discretion to withhold a hearing. *Id.*

In his motion for new trial, the only ground asserted by appellant was that he did not receive effective assistance of counsel during the punishment phase of trial because his counsel "failed to interview witnesses" and "failed to call witnesses" "to testify on [his] behalf." This is not a complaint that appellant has raised on appeal. Thus, we conclude that appellant has waived the issue of whether his trial counsel provided him with ineffective assistance of counsel during the punishment phase of trial because counsel "failed to interview witnesses" and "failed to call witnesses" "to testify on [his] behalf." *See Brown v. State*, No. 01-23-00197-CR, 2024 WL 3941067, at *1 n.1 (Tex. App.—Houston [1st Dist.] Aug. 27, 2024, no pet.) (mem. op., not designated for publication) (explaining grounds raised in motion for new trial that defendant did not then raise on appeal were waived); *Thomas v. State*, 615 S.W.3d 552, 558 n.3 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (noting, because appellant did not raise on appeal certain issues that were stated in her motion for new trial, she had waived those issues). Accordingly, we need not consider whether the trial court erred in denying appellant's motion for

new trial without holding a hearing, when the only issue he raised in his motion has been waived on appeal. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 604 (Tex. 2012) (directing "[w]hen a party . . . waives an argument on appeal, an appellate court may not consider the . . . waived issue"); *see also Smith*, 286 S.W.3d at 339 (trial court does not err in failing to hold hearing if defendant does not establish existence of reasonable grounds showing he is entitled to relief); *Mitchell v. State*, Nos. 09-19-00027-CR to 09-19-00031-CR, 2020 WL 4006151, at *28 (Tex. App.—Beaumont July 15, 2020, pet. ref'd) (mem. op., not designated for publication) (holding trial court did not err in denying motion for new trial without holding hearing where defendant could not prevail on his ineffective-assistance-of-counsel complaint on appeal, which had served as basis for motion for new trial).

## Conclusion

We affirm the judgment of the trial court.

Kristin Guiney
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Dokupil.

Do not publish. Tex. R. App. P. 47.2(b).

44